UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM PALMER, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:10CV646SNLJ |
| ) | |
| CARL R. SCOTT and CITY OF ) | |
| COUNTRY CLUB HILLS, MISSOURI, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

Plaintiff has filed this §1983 and state law action against the defendants for injuries sustained when he was shot by defendant Scott, a part-time law enforcement officer with defendant City of Country Club Hills (hereinafter referred to as the "City"). Plaintiff advances two (2) claims against defendant Scott in Count I (state law assault) and Count II (§1983 - excessive force) and two (2) claims against defendant City in Count III (§1983 municipal liability for deprivation of constitutional rights based on the City's policies, customs, practices and usages) and Count IV (§1983 municipal liability for failure to instruct, supervise, control and discipline officers). This matter is before the Court on defendant City's motion for summary judgment (on Counts III and IV) [34], filed May 13, 2011. Responsive pleadings have now all been filed and this matter is ripe for disposition.

The appropriate standard for consideration of all motions for summary judgment is as follows:

> "Summary judgment is proper if the pleadings, the discovery and
> disclosure materials on file, and any affidavits show that there is
> no genuine issue as to any material fact and that the movant is
> entitled to judgment as a matter of law. The movant bears the

> initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."

Torgerson v. City of Rochester, 643 F.3d. 1081, 1085 (8th Cir. June 1, 2011)( internal citations and quotations omitted); *see also*, Jackson v. United Parcel Service, Inc., 643 F.3d. 1031, 1042 (8th Cir. 2011)(*citing* Torgerson, *supra.*).

As an initial matter, the Court notes that in his response, plaintiff states that he "concedes that, after discovery, he cannot meet his burden of proof with regard to Count III . . .". Thus, the Court deems plaintiff to have abandoned his claim for §1983 municipal liability as contained in Count III and will dismiss this claim with prejudice.

The Court further notes that the plaintiff has only objected to the Defendant City's Statement of Uncontroverted Facts, ¶¶ 3-5; and has not filed any additional "uncontroverted facts" on his own behalf. Document [40]. Upon review of the plaintiff's objections, the Court finds same to be largely based in speculation, conjecture and opinion. The Court makes the following findings of fact based upon the undisputed material facts set forth by the defendant and the facts which are supported by the parties' evidentiary record before the Court.

On September 22, 2008, defendant Scott shot plaintiff, with his personal firearm, when he encountered plaintiff while dropping off a female friend at her home in Jennings, Missouri.

Jennings is outside the city limits of defendant City. At the time of the shooting, defendant Scott was a part-time probationary officer with the City of Country Club Hills, Missouri and had been employed with the City approximately six (6) months. At the time of the shooting, defendant Scott was off-duty. Scott Deposition [39-3], pgs. 14-15; Defendant City's Exhibit 4 [36-4].

Defendant Scott graduated from the St. Louis County Municipal Police Academy on March 27, 2008. As a part-time probationary police officer, Scott reported directly to a full time supervising officer and for his first ninety-days with the City, Scott rode with another officer for "field training". Deposition of Chief Clifton Ware [39-2], pgs. 41-42; Deposition of Defendant Carl Scott [39-3], pgs. 7-8. Furthermore, upon being hired by the City as a part-time probationary police officer, Scott was given a copy of the City's Police Department's Standard Operating Procedures (SOP), including but not limited, to the police department's written policies and procedures regarding part-time officers, law enforcement training, use of force by law enforcement personnel, and firearms. Defendant's Exhibit 3 as attached to [36]; Ware Deposition [39-2], pg. 37; Scott Deposition [39-3], pg. 8.

When Chief Ware was hired by the City in 2007[1], the police department's SOP was already in place and the only revision, after he was hired, was that after 2009, police officers no longer had to purchase their own departmental firearm. Prior to 2009, police officers had to purchase their own departmental firearm, but beginning in 2009, the City issued a departmental firearm to each police officer (and the police officer presumably kept the purchased one as his/her own personal firearm). Ware Deposition [39-2], pgs. 12-13.

---

[1]According to Chief Ware's deposition taken on February 4, 2011, Chief Ware had been police chief for the Country Club Hills Police Department for "approximately four years". Ware Deposition [38-2], pgs. 6, 10. Therefore, the Court presumes he had been hired sometime in 2007.

3

According to SOP 01-116, part-time officers are required to retain state certification by completing the state-required 48 hours of "continued education hours" in a three-year period with dates assigned by the state. Defendant's Exhibit 3 - Document [36-3], Bates Number 000019, ¶2. Part-time police officers are "not authorized by the Department to engage in any police-related actions when not on duty, and will not be represented or indemnified by the City of Country Club Hills if sued for conducting police actions when not on duty as a Country Club Hills Police Officer.". Defendant's Exhibit 3 - Document [36-3], Bates Number 000020, ¶7. Finally, part-time officers are "when on duty, authorized to carry a weapon that meets department specifications for uniform police officers.". Defendant's Exhibit 3 - Document [36-3], Bates Number 000020, ¶8. There is no written policy by the City which requires a part-time officer, when off-duty, to carry a department-issued firearm. Defendant's Exhibit 1 - Deposition of Scott Ware [36-1], pgs. 16-18; Defendant's Exhibit 2 - Deposition of Clifton Ware [36-2], pgs.18-19, 22.[2]

The City sets out its policy and purpose of required training for all police officers in SOP 01-705. Defendant's Exhibit 3 - Document [36-3], Bates Number 000023-25. The City's written policy regarding in-service and specialized training of its police officers is set out in SOP 01-708. Defendant's Exhibit 3 - Document [36-3], Bates Number 000026.

The City's "use of force" policy for its police officers is set out in SOP 01-807. Defendant's Exhibit 3 - Document [36-3], Bates Number 000028-34. It defines "deadly force" and sets out the "parameters" for use of deadly force. Defendant's Exhibit 3 - Document [36-3], Bates Number 000028, ¶¶**Definitions:** A; **Procedures**: A(1)(2)and (3). City policy prohibits

---

[2]In the future, defendant's counsel shall file deposition exhibits with a cover sheet identifying the deponent, the date of the deposition, identification of the attorneys attending the deposition, and clearly marked page numbers of the deposition.

officers from exhibiting their weapons unless circumstances create a reasonable cause to believe that it may be necessary to use deadly force. Defendant's Exhibit 3-Document [36-3], Bates Number 000028-29. While there is no written policy requiring an off-duty officer to carry a firearm, if the officer should decide to do so, then policy dictates they "carry only weapons and ammunition authorized by and registered with this agency.". Defendant's Exhibit 3 -Document [36-3], Bates Number 000029, ¶**C.Training and qualifications: 1. Deadly weapons** (a). SOP 01-807 further sets out the "escalating levels of force" that a police officer should consider when confronted with a "use of force incident". Defendant's Exhibit 3 -Document [36-3], Bates Number 000031-32, ¶**D. Escalating levels of force:**(1)-(7). Level 7 is the last level and the one in which deadly force may be used pursuant to certain restrictions. It states:

> "7. (**Level 7**): Deadly force; Deadly force as used in this policy shall mean the discharging of a firearm toward a person. Justification for the use of deadly physical force by an officer is restricted to the following:
>
> > a. When necessary to defend the officer or another person from death or serious bodily injury, and all other means of defense have failed or would be inadequate under the circumstances.
> >
> > b. To effect the arrest of a person attempting to escape from a violent felony, and then **ONLY** if the officer reasonably believes the fleeing felon poses a significant threat to human life should escape occur."

Defendant's Exhibit 3 -Document [36-3], Bates Number 000032. Finally, SOP 01-807 states:

> "F. The most important thing to remember concerning the use of force is that an officer must use judgment each time a use of force incident occurs, and an officer must base this judgment on training along with the circumstances associated with the incident to make a decision on what type of force to use. An officer must always remember that whatever the circumstances are, only the minimum amount of force necessary will be used to preserve the peace, prevent the commission of offenses, effect lawful arrests or defend persons or property."

Defendant's Exhibit 3 -Document [36-3], Bates Number 000032.

The City's policy regarding firearms carried and used by its police officers is set out in SOP 03-827. Defendant's Exhibit 3 -Document [36-3], Bates Number 000035-39. Every police officer is required to qualify annually with their department-issued firearm. It further states that "[O]ff duty firearms may be carried by all officers at the approval of the Chief of Police.". Defendant's Exhibit 3 -Document [36-3], Bates Number 000035. Chief Ware had authorized defendant Scott to carry a firearm off-duty. Ware Deposition [39-2], pgs. 22-23.

The City of Country Club Hills has not been subject to any incidents similar to the confrontation between defendant Scott and plaintiff as alleged in the plaintiff's second amended petition. Since Chief Ware became the police chief, other than the shooting incident as alleged in the instant lawsuit, there had not been any other shooting by any Country Club Hills police officer, while on-duty or off-duty. Ware Deposition [39-2], pgs. 33, 38-39.

Before setting out the Court's legal analysis, two (2) significant matters must be addressed. Firstly, since the only dispositive motion filed and addressed by this Court is the instant one filed by defendant City, the Court cannot and will not make any factual findings regarding the shooting incident involving the plaintiff and defendant Scott. For purposes of this motion only, the Court will assume that defendant Scott used deadly force against the plaintiff under circumstances rising to the level of a constitutional violation.

Secondly, plaintiff's Count IV appears to also include a claim for "lack of supervision or monitoring". However, plaintiff's pleadings focus only on his failure-to-train claim. To establish the City's liability based on a failure to monitor or supervise, plaintiff Palmer must show that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take action. Andrews v. Fowler, 98 F.3d. 1069, 1075 (8th Cir. 1996); M.W. v. City of Wentzville,

6

2011 WL 4014389, *6 (E.D.Mo. September 9, 2011)(*citing* Andrews v. Fowler, *supra.*). There is absolutely no dispute that there had been no other shooting incidents by defendant Scott or any other City of Country Club Hills police officer, while on-duty or off-duty, prior to the shooting incident of September 22, 2008. Plaintiff has failed to set forth any argument or present any evidence that the City had prior knowledge of "police misconduct" and deliberately failed to take action. Thus, there is no material issue of fact in dispute that there were no prior incidents of police misconduct similar to the one alleged in the plaintiff's second amended petition, and defendant is entitled to summary judgment as a matter of law. The Court will grant summary judgment to the defendant City on any claim for failure to supervise or monitor that plaintiff may be asserting under Count IV of his second amended petition.

Municipalities cannot be held liable on a *respondeat superior* theory under §1983 for the acts of their employees. Monell v. Soc. Serv., 436 U.S. 658, 694 (1978); *see*, Connick v. Thompson, - U.S. -, 131 S.Ct. 1350, 1359 (2011)(*citing* Monell, *supra.*); Parrish v. Ball, 594 F.3d. 993, 997 (8th Cir. 2010)(*citing* Monell, *supra.*). However, a local government may be held liable under §1983 for "inadequate training of its employees.". City of Canton v. Harris, 489 U.S. 378, 388-89 (1989); *see*, Connick v. Thompson, 131 S.Ct. at 1359; Parrish v. Ball, at 997 (*citing* City of Canton, *supra.*); Andrews v. Fowler, 98 F.3d. 1069, 1076-77 (8th Cir. 1996). However, "[A] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.". Connick v. Thompson, 131 S.Ct. at 1359 *citing* Oklahoma City v. Tuttle, 471 U.S. 808, 822-23 (1985).

To establish a claim for failure-to-train, a plaintiff must prove that: 1) the defendant municipality's training procedures were inadequate; 2) the municipality was deliberately indifferent to the rights of its people in adopting the procedures, such that the municipality's

7

failure-to-train reflects the municipality's deliberate or conscious choice; and 3) the alleged deficiency actually cause the harm. Andrews v. Fowler, at 1076; M.W. v. City of Wentzville, 2011 WL 4014389, *6 *citing* Andrews v. Fowler, *supra.* The plaintiff must establish that the municipality had notice that its procedures were inadequate and likely to result in a violation of constitutional rights. Andrews v. Fowler, at 1076; *see*, Saddler v. Goodrich, 2009 WL 57458, *2 (E.D.Mo. January 9, 2008)(*citing* Andrews, *supra.*). The plaintiff may demonstrate notice in one of two (2) ways: 1) show that the failure-to-train is so likely to result in a constitutional violation that the constitutional violation was patently obvious or 2) show that a pattern of misconduct indicates the current training is insufficient to protect constitutional rights. Parrish v. Ball, at 997 *citing* Andrews v. Fowler, at 1076; Larson by Larson v. Miller, 76 F.3d. 1446, 1454 (8th Cir. 1996); *see*, Gilliam v. Southard, 2011 WL 2443761, *6 (E.D.Mo. June 15, 2011); Johnson v. Phillips, 2011 WL 539134, *3 (E.D.Mo. February 8, 2011); Gaulden v. City of Desloge, Missouri, 2009 WL 1035346, *9 (E.D.Mo. April 16, 2009). Finally, the plaintiff must establish a direct causal link between the "inadequacy of the training procedures" and the alleged constitutional deprivation. Johnson v. Phillips, 2011 WL 539134, *3 *citing* City of Canton, 489 U.S. at 391. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.". C.I.D , through next friend, Dixon v. Boyd, III., 2010 WL 2402811, *9 (E.D.Mo. June 11, 2010) *citing* City of Canton, 489 U.S. at 390-91; *see*, Parrish v. Ball, at 997 *citing* City of Canton, 489 U.S. at 390-91. Thus, for liability to attach (as in the instant case), the identified deficiency in the defendant City's training program must be "closely related to the ultimate injury.". City of Canton, 489 U.S. at 391.

Plaintiff appears to argue that this Court should assume that defendant Scott's training was inadequate because, at the time of the shooting, he was police academy graduate with only "on-the-job" training. However, such training is not constitutionally deficient under Eighth Circuit law. *See*, Parrish v. Ball, *supra.* (training was constitutionally adequate although defendant had only 1-2 days on-the-job training, received but never read police department policy manual, and had not attended mandatory Law Enforcement Training Academy at time of incident); Andrews v. Fowler, *supra.* (training was constitutionally adequate wherein training consisted of two (2) weeks on-the-job training and graduation from police academy within one (1) year of employment by police department); Williams-El v. Johnson, 872 F.2d. 224, 230 (8th Cir. 1989)(police academy attendance and on-the-job training constitutionally adequate training against a charge of excessive force); Gilliam v. Southard, 2011 WL 2443761, *7 (defendant deputy's on-the-job training and additional hands-on and classroom training from Missouri Sheriff's Association , plus mandatory qualification at firing range meets and exceeds minimal standards for constitutionally adequate training); C.I.D., through next friend, Dixon v. Boyd, III, *supra.* (academy training, policy instruction in a use of force index detailing a progression of force from the least amount of force necessary to the use of deadly force, and mandatory continuing education training meets constitutional standards); Saddler v. Goodrich, 2009 WL 57458, *3 (police academy graduation and on-the-job training meets constitutional standards).

Plaintiff also appears to argue that defendant Scott's training was constitutionally inadequate because defendant City did not take some type of steps to make sure that defendant Scott had actually read and understood the Country Club Hills Police Department's SOP. There is no dispute that Scott was given a copy of the written SOP and defendant Scott testified that he had received the policy and read it. The Country Club Hills Police Department was not required

9

to lead Scott through the SOP step-by-step. Teasley v. Forler, 548 F.Supp.2d. 694, 706 (E.D.Mo. 2008) *citing* Liebe v. Norton, 157 F.3d. 574, 579 (8th Cir. 1998).

At the time of the shooting, defendant Scott was a police academy graduate, had received and read the Country Club Hills SOP (including a written use of force index detailing a progression of force from the least amount of force necessary to the use of deadly force), and had received the mandatory on-the-job training. He was subject to the police department's mandatory continuing education training requirement, as well as the mandatory annual firearms qualification. The Court finds no genuine material issue of fact that the City's training program is constitutionally adequate. This training meets the constitutional standards for law enforcement training and furthermore, specifically addresses the circumstances under which a Country Club Hills police officer should use deadly force.

Furthermore, there is no evidence that the City was on notice that its training program was inadequate. Plaintiff alleges that the City "should have known" that defendant Scott was "young, had virtually no police experience, had only a high school education, and would have on his possession a lethal firearm and the belief that he had a duty to intervene any time he believed circumstances warranted police action.". Plaintiff's Memorandum of Law in Opposition [39], pg. 13. Plaintiff contends that these factors make the risk of Scott shooting the plaintiff "obvious". He believes that because the City did not have a written policy prohibiting Scott from carrying his personal firearm while off-duty and/or did not discipline him after the shooting, that this "inaction" by the City coupled with the prior referenced factors, provided notice to the City that its training program was constitutionally deficient and demonstrates "deliberate indifference" on the part of the City. The Court disagrees.

The Eighth Circuit has held that:

> ". . . a written policy that is facially constitutional, but fails to give detailed guidance that might have averted a constitutional violation by an employee, does not itself give rise to municipal liability. There is still potential for municipal liability based on a policy in that situation, but only where a city's inaction reflects a deliberate indifference to the constitutional rights of the citizenry, such that inadequate training or supervision actually represents the city's 'policy'.".

Szabla v. City of Brooklyn Park, Minnesota, 486 F.3d. 385, 392 (8th Cir. 2007); *see also*, Connick v. Thompson, 131 S.Ct. at 1359-60.

Although a pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate a municipality's "deliberate indifference" for purposes of a failure-to-train claim, a plaintiff can rely on a "single-incident" theory that the constitutional violation was the "obvious" consequence of inadequate training. Connick v. Thompson, 131 S.Ct. at 1360-61 (citations omitted); *see also*, City of Canton, 489 U.S. at 390, n. 10. However, such a "single incident" theory of liability only arises "in a narrow range of circumstances". These "circumstances" generally involve incidents arising from a total lack of training, not simply an assertion that a municipal employee was not trained about "the specific scenario related to the violation". Connick v. Thompson, 131 S.Ct. at 1363-64. The Supreme Court rejects imposing liability based upon such a "nuance". It notes that "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a §1983 plaintiff will be able to point to something the city `could have done' to prevent the unfortunate incident.". Connick v. Thompson, 131 S.Ct. at 1363.

Furthermore, a plaintiff's "single incident" basis for demonstrating deliberate indifference fails where the theory of liability is predicated on the **absence** of a particular training method as advocated by the plaintiff. Failure-to-train liability "is concerned with the substance of the

11

training, not the particular instructional format. The statute does not provide plaintiffs or courts *carte blanche* to micromanage local governments throughout the United States." Connick v. Thompson, 131 S.Ct. at 1363. A plaintiff cannot establish municipal liability by "showing merely that additional training would have been helpful in making difficult decisions" because "proving that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" will not meet the deliberate indifference standard of proof. Connick v. Thompson, 131 S.Ct. at 1363-64. The Supreme Court made it clear that proving a municipality itself actually caused a constitutional violation by failing to train the offending employee "presents `difficult problems of proof', and [courts] must adhere to a `stringent standard of fault,' lest municipal liability under §1983 collapse into *respondeat superior*.". Connick v. Thompson, 131 S.Ct. at 1365 (citations omitted).

Here, the plaintiff alleges a single incident of shooting an allegedly unarmed civilian by an off-duty police officer, while using his personal firearm during a perceived police-related action. No other Country Club Hills police officer, while on-duty or off-duty, had ever been involved in any type of shooting prior to this incident. Plaintiff has offered no evidence that would suggest that the City had notice that its training program was constitutionally deficient or there was a need to provide additional training to part-time police officers on the use of excessive force. Defendant City had established policies that specifically informed part-time police officers that they were not to engage in any police-related actions while off-duty, and while such policies authorized an off-duty police officer to carry a personal firearm, such policies did not require it.[3] Furthermore, the City had established policies which set out the limited circumstances under which a police officer

---

[3] The Court notes, as Chief Ware points out in his testimony, that as a police officer and citizen of Missouri, defendant Scott was entitled to carry a personal firearm under Missouri's concealed weapon law.

12

could use deadly force. There is nothing in the record which shows that it was unreasonable for the City to believe that its policies and accompanying training was insufficient to prevent the constitutional violation as alleged by the plaintiff. Viewing the facts in a light most favorable to the plaintiff, the Court cannot find that the need for additional training was "patently obvious" or that the City was deliberately indifferent.

As for the City's failure to discipline Scott after the alleged shooting, the plaintiff fails to explain or offer any legal authority that such "inaction" demonstrates prior notice by the City that its training program was constitutionally deficient. Plaintiff simply speculates that the City's failure to discipline defendant Scott is "tacit approval" of the shooting; however, such speculation fails to meet the required "stringent standard of fault" for imposing municipal liability under §1983.

Finally, plaintiff has failed to establish the "causation" element of his §1983 failure-to-train claim. Even if this Court were to find the City's training procedures to be deficient in some manner, plaintiff has still failed to demonstrate the close relationship necessary to conclude that the City's failure to properly train Scott caused him to shoot the plaintiff or even raises a question of fact as to causation. *See*, Parrish v. Ball, at 998. Plaintiff asserts that "Country Club Hills put a loaded gun in Scott's hand when off duty but provided no training on how and when to use that loaded gun - 'but for'- these actions, a reasonable jury could conclude Scott would not have shot Plaintiff.". Plaintiff's Memorandum in Opposition [39], pg. 16.

Firstly, this statement directly contradicts the undisputed facts in this case; i.e, that the City required "part-time officers to complete all state-required training, as well as extensive officer training on use of force and firearms." Defendant's Statement of Uncontroverted Material Facts [36], ¶7. Secondly, since the City had established policies on the use of force, and

specifically on the use of deadly force, all plaintiff has shown is that Scott disregarded his training and the policies of the City when, during an off-duty personal domestic dispute, Scott chose to shoot the plaintiff with Scott's own firearm. Plaintiff has failed to show how the City's training program (or some deficiency in it) caused Scott to shoot the plaintiff. "[E]ffective training need not specifically address every conceivable situation an employee may encounter . . .". Jennings v. Wentzville R-IV Sch. Dist., 397 F.3d. 1118, 11213 (8th Cir. 2005). Plaintiff has failed to show that a deficiency in the City's training was the "moving force" behind the injury alleged, and not just Scott's deliberate decision to disregard the City's clearly established policies regarding part-time officers not engaging in police-related actions while off-duty and the very limited circumstances under which the City's police officers are to use deadly force. In essence, the plaintiff has failed to demonstrate that the City's failure to prohibit Scott from carrying his personal firearm while off-duty caused him to shoot the plaintiff. Although causation is generally a question of fact, the causal connection here is so tenuous and so remote, that this Court finds that plaintiff, as a matter of law, has failed to demonstrate the close relationship required to find that the City's failure to train Scot caused Scott to shoot the plaintiff. *See*, Parrish v. Ball, at 1000 (summary judgment appropriate on causation issue where plaintiff has failed to raise a question of fact).

The City's training program for its part-time police officers meets the standards for constitutional adequacy. Furthermore, plaintiff has failed to set forth sufficient evidence from which a jury could reasonably conclude that the single incident shooting, as alleged by the plaintiff, demonstrated such "patently obvious" inadequate training that the City was put on notice of the risk of constitutional violations, and chose to be deliberately indifferent to such risk. Finally, plaintiff has failed to demonstrate, that in light of the City's written policies and training,

14

its failure to prohibit defendant Scott from carrying a personal firearm while off-duty caused Scott to shoot the plaintiff.

Thus, summary judgment for the defendant City is proper on the plaintiff's failure-to-train claim under Count IV of the plaintiff's second amended complaint.

Dated this ___18th___ day of November, 2011.

_____
UNITED STATES DISTRICT JUDGE